From the facts stated in this case, particularly those disclosed by the testimony of Gray Little, I think the jury were at liberty to find a verdict for the plaintiffs.
When one of the defendants wished to borrow money of the witness in Tarboro, rather than draw for it on the house of "Sweeting Sterret," to which the cotton had been consigned in Baltimore, it no doubt was because he considered the money would be more useful to him in Baltimore than it would be in Tarboro. By electing to keep it there he exercised an act of ownership over it; and by doing so he *Page 81 
made it his own, and this he had a right to do, for it was stipulated between the plaintiffs and the defendants that the proceeds of the cotton, when sold, should be credited on the debt due from the plaintiffs to the defendants. And if at that time the amount of sales had been known, and the plaintiffs and the defendants had come to a settlement of their accounts the plaintiffs would have had a credit (as they ought to have had) for the amount of those sales; and if the house of "Sweeting Sterret" were solvent at that time, but failed afterwards, the defendants must have borne the loss.
But it does not appear whether the jury in finding a verdict for the plaintiffs took this view of the case, or whether, laying the testimony of Little out of the question, they were influenced (149) in finding their verdict by the charge of the court. If their verdict was found upon the testimony of Little, I think it ought not to be disturbed. If, laying the testimony of Little out of the case, it was so found in consequence of the charge of the court, it will be proper next to consider whether in that case it ought to be set aside. The court in its charge to the jury said "that the defendants were bound to use that care and diligence which a prudent and discreet man would use relative to his affairs; that the circumstance of the defendants losing their cotton was not the rule to govern them, but they must inquire whether they acted as prudent and discreet men in the business." Viewing the case as I have before done, connected with the testimony of Little, no want of diligence is imputable to the defendants. They in apt time elected to consider the money their own in Baltimore, and chose to leave it there rather than have it at home. But laying that testimony aside, the case assumes a different aspect.
It does not otherwise appear but that the house of "Sweeting Sterret" merited their confidence when the defendants made a consignment of the cotton to it. That they thought so is proved from the fact that they made a consignment to it of their own produce, and some of the neighboring merchants did the same thing. The plaintiffs were not ignorant of the fact that such consignment was made of their cotton, for when they applied to the defendants for intelligence respecting it they were informed that no account of sales had come to hand. It does not appear that in this the defendants were incorrect. It seems that the defendants had made other consignments before that time to the same house; that they had drawn bills upon it which had been accepted and paid. From the spring 1820 until the winter 1820-1821, there was no distrust of the solvency of the house. The first intelligence of it was also intelligence that diligence was useless. What time the house failed does not appear, so that it does not (150) *Page 82 
appear whether any diligence would have prevented a loss. The plaintiffs themselves, if they had apprehended danger, might have made inquiry, for it must be kept in view that the defendants were mere mandatories; they acted without a reward.
Under this latter view of the case I think the principle of decision will not steer clear of the circumstance that the property of the defendants shared the same fate with that of the plaintiffs; although it will not make it the standard of decision, nor will it altogether overlook the circumstance that others of the same neighborhood with the defendants were sufferers in the same way. These and other circumstances which make up the case make it necessary to inquire whether the defendants were guilty either of fraud or gross negligence, and if, referring the jury to that standard in making a decision, they had found a verdict for the plaintiffs, I should willingly acquiesce, even without the aid of Gray Little's testimony. There is a material difference between a bailee who acts for a reward and one who acts gratuitously. In Shiells v. Blackburn, 1 H. Bl., 158, it is laid down by the court and declared by LordLoughborough that he agrees with Sir William Jones in that respect, that where a bailee undertakes to perform a gratuitous act from which the bailor alone is to receive benefit, there the bailee is only liable for gross negligence, but it is otherwise where the profession of the bailee implies skill, for in that case a want of skill is imputable as gross neglect. See, also, Cow., 480, to the same effect. Sir William Jones, in his law of Bailments, page 15, says that if the bailor only receives benefit the bailee is only liable for gross neglect. Therefore, if the jury had been instructed that the defendants were only liable for fraud or gross neglect, whether they had found a verdict for the plaintiffs on the testimony of Little or under that charge of the court, I should be of opinion the verdict ought to stand, but as the jury have been referred to another rule to go by — one that I think governs the case of a mandatory who acts for a commission or a reward, I think a new (151) trial should be granted, and for that reason only.
HENDERSON, J., concurred with HALL.